UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CAEL TECHNOLOGIES (PVT.) LTD.,

                            Plaintiff,

            -against-

PRECISE VOTING, LLC.,
PRECISE VOTING, LLC.,
VOTRITE, LLC.,

                           Defendants.

-----------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   DEC 0 5 2014   ★

LONG ISLAND OFFICE

MEMORANDUM AND ORDER

CV 13-1470

(Wexler, J.)

APPEARANCES:

    SABHARWAL & FINKEL, LLC
    BY:   ADAM D. FINKEL, ESQ.
    Attorneys for Plaintiff
    350 Fifth Avenue, 59th Floor
    New York, New York 10118

    CITTONE & CHINTA LLP
    BY:   HENRY JOSEPH CITTONE, ESQ.
            PADMAJA CHINTA, ESQ.
    Attorneys for Plaintiff
    11 Broadway, Suite 615
    New York, New York 10004

    BARRY M. KRIVISKY, ESQ.
    BY:   BARRY M. KRIVISKY, ESQ.
    Attorneys for Defendants
    400 Garden City Plaza
    Garden City, New York 11530

WEXLER, District Judge:

    Before the Court is the Plaintiff's motion to dismiss Defendants' counterclaims, pursuant

to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants oppose the motion. For the following reasons, Plaintiff's motion is denied.

## BACKGROUND

### I. The Facts Alleged in the Complaint

Plaintiff, Cael Technologies ("Cael"), is an Indian corporation that specializes in providing customized software applications, software product development and other software products and services. (Compl. ¶ 1.) Defendants Precise Voting, a New York limited liability company ("Precise New York"), and Precise Voting, a Delaware limited liability company ("Precise Delaware"), are in the business of manufacturing and marketing electronic voting machines and services in the United States. (Compl. ¶¶ 3-6.) Defendant VotRite is a wholly owned subsidiary of Precise Voting and is a provider of electronic voting machines and services, including rentals, in the United States. (Compl. ¶ 9.)

In early 2005, Plaintiff was approached by an Indian company, SSW Information Technology Services Private Limited ("WITS India"), to develop an electronic voting machine system to be marketed worldwide, including in the United States, by the WITS Group Inc. ("WITS Group"). (Compl. ¶¶ 17-18.) In May 2005, Plaintiff entered into an agreement with WITS India for the development of a functional voting machine prototype for the United States market. (Compl. ¶ 19.) The Advanced Electronic Voting System ("AEVS") prototype was to be made solely for marketing and demonstration purposes and not for sale. (Compl. ¶ 20.) Plaintiff referred to the new voting system as "VotRite." (Compl. ¶ 21.)

Around the same time, Plaintiff entered into an agreement with another Indian company,

Analogic Technomatics Private Limited ("Analogic"), who was to provide the hardware box for the AEVS prototype exclusively for Plaintiff and based solely on Plaintiff's specifications. (Compl. ¶ 21.) On or about June 28, 2005, Plaintiff delivered the functional AEVS prototype to the WITS Group in New Jersey. (Compl. ¶ 22.) Plaintiff subsequently delivered four more functional AEVS prototypes to the WITS Group in New Jersey between late 2005 and August 2006, pursuant to purchase orders placed by the WITS Group. (Compl. ¶ 23.)

In 2008, Plaintiff registered its copyright in the software and source code for the AEVS prototype in India and was issued Certificate of Registration No. SW-3861/2008 entitled "Cael Voting Systems Software." (Compl. ¶ 28.) Plaintiff is the sole owner of this copyright. (Compl. ¶ 30.)

In or about September 2006, Plaintiff entered into another agreement with Analogic for the manufacture of a close-to-production AEVS prototype, again using software exclusively developed for Plaintiff and based solely on Plaintiff's specifications. (Compl. ¶ 31.) Plaintiff incorporated the copyrighted Cael Voting Systems Software into the AEVS prototype provided by Analogic and gave it to Analogic for completion of the hardware. (Compl. ¶ 32.) Analogic, however, failed to deliver the close-to-production AEVS prototype to Plaintiff. (Compl. ¶ 32.)

In or about early 2007, Plaintiff grew suspicious of Analogic and WITS India and cautioned WITS India against using or reengineering its copyrighted Cael Voting Systems Software through Analogic or anyone else. (Compl. ¶ 34.) In July 2007, Plaintiff commenced arbitration proceedings against Analogic in India for breach of its 2006 agreement and to prevent Analogic from exploiting Plaintiff's copyrighted software. (Compl. ¶ 35.) During these proceedings, an interim injunction was issued against Analogic and material evidence was seized

from Analogic, including hard drives. (Compl. ¶ 35.)

In or about August 2012, Plaintiff received the confidential report of the Andrha Pradesh Forensic Science Laboratories from the arbitrator. (Compl. ¶ 36.) The report concluded that the hard drives seized from Analogic contained Plaintiff's copyrighted Cael Voting Systems Software. (Compl. ¶ 36.)

In late 2012, Plaintiff began investigating the United States voting machines market. (Compl. ¶ 37.) During this investigation, Plaintiff discovered that Defendants were marketing an electronic voting system very similar to Plaintiff's Voting Systems Software. (Compl. ¶ 37.) Defendants' voting machines include the same major features as Plaintiff's copyrighted Voting Systems Software, use the same acronym as that of Plaintiff's proposed prototype - "AEVS" - and Defendants formed a susbsidiary using the same name intended to be used by Plaintiff for its voting system - "VotRite." (Compl. ¶¶ 39-41.)

Plaintiff alleges that Defendant Precise Voting gained access to Plaintiff's copyrighted Voting Systems Software through Analogic or the WITS Group. (Compl. ¶ 38.) Plaintiff bases this belief on a 2007 online article in which Precise Voting states that through an entity known as Bright Software Development, Inc., it decompiled a source code that was originally developed by an Indian programmer who "disappeared" mid-project, for use in its electronic voting machines. (Compl. ¶ 38 and Ex. B, annexed thereto.) According to Plaintiff, Defendants copied, decompiled and modified Plaintiff's copyrighted Voting Systems Software and registered it with the United States Copyright Office in 2006 as its own software with the title "Voting Machine Software." (Compl. ¶ 42; Kapsis Aff. ¶ 6.)

Plaintiff commenced this action on March 20, 2013, alleging copyright infringement.

Defendants moved to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that Plaintiff's copyright infringement claim is time-barred. The Court granted Defendants' motion in part, dismissing as time-barred any claims of copyright infringement based on acts taken by Defendants prior to March 20, 2010. Defendants thereafter filed their Answer containing six counterclaims, five of which Plaintiff now seeks to dismiss.

II.     The Counterclaims

Defendants allege that they are the owners of the AEVS and VOTRITE trademarks and have been since 2006. (Counterclaim ¶¶ 6-7.) Defendants further allege that Plaintiff's past use of its trademarks, as well as any future use in the United States, will impair Defendants' rights in those trademarks, as well as deceive and mislead the public into thinking a connection exists between Plaintiff and Defendants. Accordingly, Defendants assert the following six counterclaims: (1) for a declaratory judgment of copyright non-infringement; (2) trademark infringement and (3) false designation of origin, pursuant to the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a)(1)(A); and (4) deceptive practices, (5) false advertising, and, (6) misappropriation of trademarks, pursuant to New York state law. Plaintiff does not seek to dismiss the counterclaim for a declaratory judgment of copyright non-infringement.

III.    Legal Standard

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." Revonate Mfg., LLC v. Acer Am. Corp., No. 12 Civ. 6017, 2013 WL 342922, at *2 (S.D.N.Y. Jan. 18, 2013). "To survive a motion to dismiss, a [counterclaim] must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility" is achieved when the "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).

In considering Defendants' counterclaims, the Court must accept as true all factual allegations in the pleadings and draw all reasonable inferences in the non-moving party's favor. See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007). Nevertheless, the factual allegations contained in the counterclaims "must be enough to raise a right of relief above the speculative level." Twombly, 550 U.S. at 555. If the counterclaimant has "not nudged [its] claims across the line from conceivable to plausible," the counterclaim must be dismissed. Id. at 570.

IV. Disposition of the Motion

Court employ the same standard when evaluating claims for trademark infringement and false designation of origin under the Lanham Act. See Twentieth Century Fox Film Corp. v. Marvel Enters., Inc., 220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002). The same standard also applies to trademark claims brought pursuant to New York common law. See Lorillard Tobacco Co. v. Jamelis Grocery, Inc., 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005). In this regard, to state a claim under the Lanham Act, a party must demonstrate: (1) "that it has a valid mark entitled to protection," and (2) that the [opposing party's] use of that mark is likely to cause confusion." Time, Inc. v. Petersen Publ'g Co. LLC, 173 F.3d 113, 117 (2d Cir. 1999).

The crux of Defendants' counterclaims are that by shipping the various AEVS prototypes into the United States in 2005 and 2006, Plaintiff infringed and misappropriated Defendants' trademarks, causing public deception and injury. Defendants further allege that any similar actions by Plaintiff in the future will continue to infringe its trademarks. While the counterclaims may not be pleaded in great detail, the Court finds that they satisfy the plausibility standard enunciated in Iqbal and Twombly and are sufficient to survive a motion to dismiss.

Accordingly, Plaintiff's motion to dismiss Defendants' counterclaims is denied. Plaintiff may, however, renew its arguments on a motion for summary judgment once discovery is completed.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss Defendants' counterclaims is denied. Plaintiff may renew its arguments for dismissal on a motion for summary judgment at the close of discovery.

**SO ORDERED:**

Dated: Central Islip, New York
December 5, 2014

s/ Leonard D. Wexler
LEONARD D. WEXLER
United States District Judge