UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

CAEL TECHNOLOGIES (PVT.) LTD.,

                                    Plaintiff,

                    -against-

PRECISE VOTING, LLC.,
PRECISE VOTING, LLC.,
VOTRITE, LLC.,

                                    Defendants.

-------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   SEP 2 6 2016   ★

LONG ISLAND OFFICE

MEMORANDUM AND ORDER

CV 13-1470

(Wexler, J.)

APPEARANCES:

        SABHARWAL & FINKEL, LLC
        BY:    ADAM D. FINKEL, ESQ.
        Attorneys for Plaintiff
        350 Fifth Avenue, 59th Floor
        New York, New York 10118

        CITTONE & CHINTA LLP
        BY:    HENRY JOSEPH CITTONE, ESQ.
               PADMAJA CHINTA, ESQ.
        Attorneys for Plaintiff
        11 Broadway, Suite 615
        New York, New York 10004

WEXLER, District Judge:

        Before the Court is the Plaintiff's motion for a judgment on the pleadings, pursuant to

Federal Rule of Civil Procedure 12(c), against Defendant VotRite LLC ("VotRite"), based on

VotRite's default as a result of its failure to obtain counsel in this action. VotRite has failed to

file any opposition to the within motion. For the following reasons, Plaintiff's motion is granted.

-1-

BACKGROUND

I.    The Facts Alleged in the Complaint

Plaintiff, Cael Technologies ("Cael"), is an Indian corporation that specializes in providing customized software applications, software product development and other software products and services. (Compl. ¶ 1.) Defendants Precise Voting, a New York limited liability company ("Precise New York"), and Precise Voting, a Delaware limited liability company ("Precise Delaware"), are in the business of manufacturing and marketing electronic voting machines and services in the United States. (Compl. ¶¶ 3-6.) Defendant VotRite is a wholly owned subsidiary of Precise Voting and is a provider of electronic voting machines and services, including rentals, in the United States. (Compl. ¶ 9.)

In early 2005, Plaintiff was approached by an Indian company, SSW Information Technology Services Private Limited ("WITS India"), to develop an electronic voting machine system to be marketed worldwide, including in the United States, by the WITS Group Inc. ("WITS Group"). (Compl. ¶¶ 17-18.) In May 2005, Plaintiff entered into an agreement with WITS India for the development of a functional voting machine prototype for the United States market. (Compl. ¶ 19.) The Advanced Electronic Voting System ("AEVS") prototype was to be made solely for marketing and demonstration purposes and not for sale. (Compl. ¶ 20.) Plaintiff referred to the new voting system as "VotRite." (Compl. ¶ 21.)

Around the same time, Plaintiff entered into an agreement with another Indian company, Analogic Technomatics Private Limited ("Analogic"), who was to provide the hardware box for the AEVS prototype, exclusively for Plaintiff and based solely on Plaintiff's specifications. (Compl. ¶ 21.) On or about June 28, 2005, Plaintiff delivered the functional AEVS prototype to

the WITS Group in New Jersey. (Compl. ¶ 22.) Plaintiff subsequently delivered four more functional AEVS prototypes to the WITS Group in New Jersey between late 2005 and August 2006, pursuant to purchase orders placed by the WITS Group. (Compl. ¶ 23.)

In 2008, Plaintiff registered its copyright in the software and source code for the AEVS prototype in India and was issued Certificate of Registration No. SW-3861/2008 entitled "Cael Voting Systems Software." (Compl. ¶ 28.) Plaintiff is the sole owner of this copyright. (Compl. ¶ 30.)

In or about September 2006, Plaintiff entered into another agreement with Analogic for the manufacture of a close-to-production AEVS prototype, again using software exclusively developed for Plaintiff and based solely on Plaintiff's specifications. (Compl. ¶ 31.) Plaintiff incorporated the copyrighted Cael Voting Systems Software into the AEVS prototype provided by Analogic and gave it to Analogic for completion of the hardware. (Compl. ¶ 32.) Analogic, however, failed to deliver the close-to-production AEVS prototype to Plaintiff. (Compl. ¶ 32.)

In or about early 2007, Plaintiff grew suspicious of Analogic and WITS India and cautioned WITS India against using or re-engineering its copyrighted Cael Voting Systems Software through Analogic or anyone else. (Compl. ¶ 34.) In July 2007, Plaintiff commenced arbitration proceedings against Analogic in India for breach of its 2006 agreement and to prevent Analogic from exploiting Plaintiff's copyrighted software. (Compl. ¶ 35.) During these proceedings, an interim injunction was issued against Analogic and material evidence was seized from Analogic, including hard drives. (Compl. ¶ 35.)

In or about August 2012, Plaintiff received the confidential report of the Andrha Pradesh Forensic Science Laboratories from the arbitrator. (Compl. ¶ 36.) The report concluded that the

hard drives seized from Analogic contained Plaintiff's copyrighted Cael Voting Systems Software. (Compl. ¶ 36.)

In late 2012, Plaintiff began investigating the United States voting machines market. (Compl. ¶ 37.) During this investigation, Plaintiff discovered that Defendants were marketing an electronic voting system very similar to Plaintiff's Voting Systems Software. (Compl. ¶ 37.) Defendants' voting machines include the same major features as Plaintiff's copyrighted Voting Systems Software, use the same acronym as that of Plaintiff's proposed prototype - "AEVS" - and Defendants formed a susbsidiary using the same name intended to be used by Plaintiff for its voting system - "VotRite." (Compl. ¶¶ 39-41.)

Plaintiff alleges that Defendant Precise Voting gained access to Plaintiff's copyrighted Voting Systems Software through Analogic or the WITS Group. (Compl. ¶ 38.) Plaintiff bases this belief on a 2007 online article in which Precise Voting states that through an entity known as Bright Software Development, Inc., it decompiled a source code that was originally developed by an Indian programmer who "disappeared" mid-project, for use in its electronic voting machines. (Compl. ¶ 38 and Ex. B, annexed thereto.) According to Plaintiff, Defendants copied, decompiled and modified Plaintiff's copyrighted Voting Systems Software and registered it with the United States Copyright Office in 2006 as its own software with the title "Voting Machine Software." (Compl. ¶ 42; Kapsis Aff. ¶ 6.)

Plaintiff commenced this action on March 20, 2013, alleging copyright infringement. Defendants moved to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that Plaintiff's copyright infringement claim is time-barred. The Court granted Defendants' motion in part, dismissing as time-barred any claims of copyright

-4-

infringement based on acts taken by Defendants prior to March 20, 2010. Defendants thereafter filed their Answer containing six counterclaims.

## II.    The Counterclaims

Defendants allege that they are the owners of the AEVS and VOTRITE trademarks and have been since 2006. (Counterclaim ¶¶ 6-7.) Defendants further allege that Plaintiff's past use of its trademarks, as well as any future use in the United States, will impair Defendants' rights in those trademarks, as well as deceive and mislead the public into thinking a connection exists between Plaintiff and Defendants. Accordingly, Defendants assert the following six counterclaims: (1) for a declaratory judgment of copyright non-infringement; (2) trademark infringement and (3) false designation of origin, pursuant to the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a)(1)(A); and (4) deceptive practices, (5) false advertising, and, (6) misappropriation of trademarks, pursuant to New York state law. In August 2014, Plaintiff moved to dismiss all of Defendants' counterclaims except the declaratory judgment of copyright non-infringement. The Court denied that motion on December 5, 2014.

## III.    Procedural History

On November 25, 2014, Defendant Precise New York filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of New York and a suggestion of bankruptcy was filed with the Court on December 17, 2014.[1] Thereafter, on January 12, 2015, Defendants'

---

[1] Precise New York's bankruptcy case remains pending and, therefore, the automatic bankruptcy stay is in effect. Plaintiff does not seek a judgment on the pleadings against Defendant Precise New York. It appears undisputed that Precise Delaware is a defunct

attorney moved to withdraw as counsel for Defendants. The Court granted the application on January 21, 2015 and, after advising James Kapsis, the principal of VotRite and Precise Voting that corporations cannot proceed pro se, Defendants were afforded sixty days to retain new counsel. (Docket Entry 62.) On March 24, 2015, Defendants were granted an additional thirty days to obtain new counsel. By letter dated April 21, 2015, Mr. Kapsis advised the Court that Defendants are unable to afford counsel and "will have to default." (Docket Entry 66.)

On December 9, 2015, Plaintiff submitted a request for a certificate of default with respect to Defendant VotRite to the Clerk of Court. (Docket Entry 70.) That request was denied by the Clerk of the Court on December 14, 2015, based on the fact that an appearance for VotRite had previously been entered in this action. Plaintiff was directed to instead file a motion for a judgment on the pleadings, pursuant to Rule 12(c). That motion, which VotRite has failed to oppose, is now before the Court.

DISCUSSION

"After the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). While Plaintiff styled the within motion as a 12(c) motion, what it is really seeking is a default judgment and the Court will construe the motion as such. As the Court advised Mr. Kapsis, the principal of VotRite, corporations may not appear pro se. See Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983). "The failure by a corporate defendant to obtain counsel constitutes a failure to defend," warranting the entry of a default judgment. Demopoulos v. Sweet Clover Farms, Inc., No. 15 CV

---

corporation. Plaintiff similarly does not seek any judgment against Precise Delaware.

6148, 2016 U.S. Dist. LEXIS 119449, at *15-16 (E.D.N.Y. Sept. 1, 2016) (citing Shapiro, Bernstein & Co. v. Continental Record Co., 386 F.2d 426, 427 (2d Cir. 1967)); see also Balestriere PLLC v. CMA Trading, Inc., No. 11 Civ. 9459, 2012 U.S. Dist. LEXIS 29620, at *5 (S.D.N.Y. Mar. 5, 2012) ("A default is warranted if a defendant cannot proceed without counsel and either will not or cannot obtain an attorney. Failure by such a party to obtain counsel after being warned of the necessity to do so justifies entry of a default or dismissal."). VotRite was afforded more than ninety days to obtain new counsel after its former counsel was permitted to withdraw. It failed to do so. Recognizing its inability to appear pro se, Mr. Kapsis, on behalf of VotRite, advised the Court that VotRite would have to default. The Court finds that by its failure to obtain counsel, VotRite has indeed defaulted in this action. Accordingly, the Clerk of the Court is directed to strike the Answer from the docket, solely with respect to VotRite, and to enter VotRite's default.[2]

As stated supra, the Court will construe the within motion as one for a default judgment. When a party fails to appear or defend an action by an adverse party, a default may be entered against the non-moving party. See Fed. R. Civ. P. 55. After entry of the default, "a defendant is deemed to have admitted all of the well-pleaded allegations raised in the complaint pertaining to liability." Time Warner Cable v. Rivera, No. 99-2339, 1995 WL 362429, at *2 (E.D.N.Y. June 8, 1995); see also Time Warner Cable v. Barbosa, No. 98-3522, 2001 WL 118606, at *5 (S.D.N.Y. Jan. 2, 2001 (quoting Transworld Airlines, Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971)). Plaintiff is "entitled to all reasonable inferences from the evidence it offers."

---

[2] The Answer shall remain on the docket with respect to the remaining defendants, Precise New York and Precise Delaware.

<u>Cablevision Sys. N.Y. City Corp. v. Lokshin</u>, 980 F. Supp. 107, 112 (E.D.N.Y. 1997) (citing <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981)).

Based on VotRite's failure to obtain counsel and defend this action, Plaintiff is entitled to a default judgment with respect to all of the claims pleaded in the Complaint. Moreover, since VotRite's Answer is being stricken, the counterclaims pleaded in it are dismissed, solely with respect to VotRite. Plaintiff is directed to submit a proposed judgment consistent with this opinion within ten (10) days. In addition, Plaintiff is directed to advise the Court, within ten (10) days, whether it intends to continue this action against Defendant Precise Delaware, a defunct corporation, or Precise New York, currently in bankruptcy. In the event that Plaintiff does not intend to continue this action with respect to either defendant, a stipulation of discontinuance shall be filed within ten (10) days.

CONCLUSION

For the foregoing reasons, the Court finds that Defendant VotRite's failure to obtain counsel constitutes a default and directs the Clerk of the Court to strike the Answer from the docket, solely as it pertains to VotRite, and to enter VotRite's default. The Court further construes Plaintiff's Rule 12(c) motion as a motion for a default judgment and, as such, grants Plaintiff a default judgment against VotRite on all of the claims contained in the Complaint. In addition, due to VotRite's Answer being stricken, the counterclaims pleaded by VotRite are dismissed. Plaintiff is directed to submit a proposed judgment, consistent with this opinion, within ten (10) days. Plaintiff is further directed to advise the Court, within ten (10) days, whether it intends to continue this action with respect to Defendants Precise New York and

Precise Delaware.  In the event Plaintiff does not intend to continue this action as to either of the remaining defendants, Plaintiff shall file a stipulation of discontinuance within ten (10) days.

**SO ORDERED:**

Dated: Central Islip, New York
      September 26, 2016

LEONARD D. WEXLER
United States District Judge